JAMES HALLIS and JUANITA HALLIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
HALLIS v. COMMISSIONER
Docket No. 9829-77.
United States Tax Court
T.C. Memo 1978-450; 1978 Tax Ct. Memo LEXIS 63; 37 T.C.M. (CCH) 1847-42; November 8, 1978, Filed *63 James Hallis, pro se. Philip G. Owens, for the respondent. TIETJENS
MEMORANDUM FINDINGS OF FACT AND OPINION TIETJENS, Judge: Respondent determined a deficiency in petitioners' income tax for the year ended December 31, 1974 in the amount of $765.65. The questions presented are: (1) whether petitioners failed to establish that they are entitled to a deduction for educational travel expense; and (2) whether petitioners failed to establish that respondent's disallowance of a claimed casualty loss deduction in the amount of $771 was erroneous. FINDINGS OF FACT Some of the facts are stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Petitioners, James Hallis and Juanita Hallis, were, during the taxable year involved, husband and wife. They filed a joint income tax return for the taxable year 1974 with the District Director of Internal Revenue, Louisville, Kentucky. Their records were kept and their income tax returns prepared on the cash basis of accounting. On September 21, 1977, the date of the filing of the petition upon which this proceeding is based, the residence of the *64 petitioners was Lexington, Kentucky. With respect to the adjustments made in the notice of deficiency, respondent concedes the disallowance $216of claimed by petitioners for expenses incurred in maintaining an office in their home and the disallowance of claimed travel expense in the amount of $113.60. Mrs. Hallis was employed by the Fayette County Board of Education. She teaches the fourth grade. Mr. Hallis is employed by the Commonwealth of Kentucky as a vocational teacher of electronics and photography. He teaches at the Central Kentucky State Vocational Technical School. During 1974, the petitioners departed on an organized tour to Alaska, Hawaii, and Japan, sponsored by the National Education Association. Petitioners' employers neither required nor requested them to take the tour, nor were petitioners required to take the tour for any other reason. The tour took place during petitioners' vacation period and lasted approximately 15 days. Five of those days were spent in Japan. The major portion of the travel activities undertaken by petitioners during the tour was engaged in while petitioners were in Hawaii and Alaska. The tour was not necessary for either petitioner *65 to retain his or her position or for them to be promoted to a higher position. Petitioners' employers did not grant petitioners a leave of absence for the period they were taking the trip. Mrs. Hallis' employer did not require her to take the Alaska/Hawaii/Japan tour in order to retain tenure. She did not receive any advanced educational credits as a result of taking the tour. She made no report to her employer concerning her travel nor did she receive any academic or other credit for the trip. Mr. Hallis made no "report" to his employer concerning this travel. Neither petitioner took any type of educational course during the tour. The salary received by Mr. Hallis for teaching is paid over a 12-month period.He did not receive any extra pay for the period that he was on the Alaska/Hawaii/Japan tour. The salary received by Mrs. Hallis for teaching is received over a nine-month period. She did not receive any pay for the period that she was on the tour. Neither petitioner kept a diary listing the places visited during the tour, or to record the names of persons consulted, or to record the amount of time spent during visits, discussions, or consultations. A paper that *66 was written by Mr. Hallis and submitted to someone at Eastern Kentucky University in 1976 discussed Japanese philosophy toward an application of vocational education. It was 14 pages long and bears an inscription by someone unknown, "Interesting Paper - I hope it is of some value in your work." Petitioners did not incur an expense greater than $1,469.97 in making the trip to Alaska, Hawaii, and Japan. On petitioners' 1974 Federal income tax return, petitioners claimed a casualty loss deduction based on two automobile accidents that occurred during 1974. One accident occurred in June, 1974. As a result of this accident, petitioners paid $979 to repair their automobile. The other accident occurred in November, 1974. As a result of this accident, petitioners paid $325 to have the automobile repaired. Thus petitioners claimed a casualty loss in the amount of $1,104. The automobile that was involved in these two accidents was insured at the time of both accidents by a solvent insurer with a valid collision insurance policy. Petitioners elected not to file a claim against their insurer for collision loss. Petitioners elected instead to pay for the damage that resulted *67 from these two accidents because they did not want their insurance rates to increase. Both of the above accidents involved the petitioners' 1968 Chevrolet Corvette. During 1974, a third accident occurred while petitioners' daughter was driving the petitioners' Ford station wagon. This automobile was not insured by a solvent insurer with a valid collision insurance policy. Petitioners paid $433 in order to repair the station wagon. ULTIMATE FINDINGS OF FACT Petitioners failed to establish that they are entitled to any deduction for educational travel expense. Petitioners failed to establish that respondent's disallowance of a claimed casualty loss deduction in the amount of $771 was erroneous. OPINION This is a difficult case in which to write an opinion.Difficult because of the fact that no matter how much sympathy we might have for petitioners, there are just no proven facts to carry petitioners' burden of showing that the respondent's determinations were erroneous. Of course petitioners took a 15-day trip to Alaska (five days), Tokyo (five days), and Hawaii (five days). They, or he, took some pictures. James talked to two Japanese persons about meeting with *68 others concerning Japanese technology which might have had some relation to his electronics teaching in Kentucky. How much time he spent with them or in Japanese electronics establishments is not proven. James did write a short paper a few years later which he filed with his school and which resulted in the equivocal endorsement by some unidentified person, "Interesting paper -- I hope it is of some value in your work." To us, all proof falls far short of establishing error in respondent's determination. As for the losses to the automobiles which petitioners first claimed and respondent has disallowed as casualty losses and which petitioners are now claiming as "business" losses -- we are at a "loss" over what to do, except to sustain the respondent. James apparently now claims he used the automobiles in his business as a photographer, and as a result of accidents to the cars, he sustained "business" losses. There is no evidence that he ever profited from photography aside from teaching it as a course. How the cars were involved in his teaching activities is certainly unclear. What kind and how bulky the equipment he was required to carry in the cars is unestablished. Did *69 he necessarily carry weighty cameras and floodlights or a pocket "Instamatic?" Perhaps it is clear to him. It is not to us. We see no necessity for burdening the record by naming and analyzing the cases cited by the parties. They are old hat -- we need only add that petitioners have completely failed to carry their burden of proof here. We therefore sustain the respondent on the issues before us, but because of concessions, Decision will be entered under Rule 155.