JOE L. AND MARIA PILAR MEDLOCK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MEDLOCK v. COMMISSIONER
Docket No. 6923-77.
United States Tax Court
T.C. Memo 1978-464; 1978 Tax Ct. Memo LEXIS 47; 37 T.C.M. (CCH) 1847-92; November 22, 1978, Filed Joe L. Medlock, pro se. James Ross, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Murray H. Falk pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *50 OPINION OF THE SPECIAL TRIAL JUDGE FALK, Special Trial Judge: Respondent determined a deficiency of $375.01 in petitioners' federal income tax for 1975 and a deficiency of $90 in federal excise tax for excess contributions to an individual retirement account. The issues presented are: (1) Whether petitioners are entitled to a deduction under section 219(a) for all or some part of a contribution made to an individual retirement account (IRA) and (2) whether petitioners are liable for an excise tax under section 4973(a) for excess contributions to an IRA. FINDINGS OF FACT Petitioners resided at Calexico, California, at the time the petition herein was filed. During 1975 petitioner Joe L. Medlock was employed by the Imperial Irrigation District. He was covered by a qualified pension plan in connection with that employment. He and his wife, petitioner Maria Pilar Medlock, also operated a fast-food restaurant known as Medlock's Orange Julius in Calexico. The restaurant showed a net profit of $20,808.54 in 1975. All of the next profit of the business was reported as Joe's on the computation of social security self-employment tax (Schedule SE) attached to petitioners' *51 return. In 1975, Joe opened one individual retirement account, in his name, to which $1,500 was deposited during that year. He closed the IRA account in a later year, upon being advised of his ineligibility for the deduction in question. Respondent disallowed the deduction claimed by petitioners for that contribution and determined that petitioners are liable for the excise tax on excess contributions to an IRA in respect thereof. OPINION Petitioner Joe L. Medlock now recognizes that under the provisions of section 219(b)(2) [3] he is not entitled to a deduction for his contribution to an IRA in 1975. He states, nevertheless, that it was his intent to provide an IRA for himself and his wife from the income of the restaurant business and that, in fact, had the IRA been established in his wife's name -- she not being covered by any disqualifying employee plan -- the contribution would have been deductible. He argues from that, and on the basis of the California community property laws, that at least half of the contribution should be allowed as a deduction; i.e., the half contributed in respect of Maria. Even assuming for the purposes of deciding this case (despite some evidence *52 to the contrary) that Maria had income in respect of which an IRA could have been established, we do not agree. The provisions of section 219(c)(2) foreclose petitioners' argument founded upon the California community property laws. That subsection states: The maximum deduction under subsection (b)(1) shall be computed separately for each individual, and thissectionshallbeappliedwithoutregardtoanycommunityproperty *53 laws. [Emphasis supplied.] The clause underscored above clearly prohibits our application of community property laws to attain the result which petitioners would have us reach. As for petitioners' other argument, it is fundamental in tax law that taxpayers, while generally free to arrange their financial affairs so as to minimize their tax liabilities, must accept the tax consequences of the arrangements which they make. The manner in which petitioners handled this IRA account had significance other than as regards this narrow question. The account was in Joe's name and he had control of it. He discontinued it and transferred the funds from it when he realized that he had been misinformed about his eligibility for a deduction. For tax purposes, his age and life were important. See secs. 219(b)(3) and 408(b)(3), (4), and (5). Those facts cannot be changed, regardless of petitioners' intent. We simply cannot recast this transaction in a way in which petitioners could have formulated it, but didn't, perhaps to achieve the tax savings which they wished. No one has to arrange his business affairs to satisfy the tax collector's appetite for revenues. But *54 when a taxpayer has failed to arrange his affairs so as to minimize his taxes, he cannot expect the court to do it for him nuncprotunc.Balthrope v. Commissioner,356 F.2d 28, 34 (5th Cir. 1966). We sustain respondent's determination. An excise tax of 6 percent is imposed by section 4973(a) on any excess contribution to an IRA during the taxable year. Inasmuch as petitioners were entitled to no deduction under section 219(a), the entire $1,500 contribution was in excess of the amount deductible for the year. Orzechowskiv. Commissioner,69 T.C. 750 (1978), on appeal (2d Cir., April 21, 1978). Under these facts the 6 percent excise tax is clearly applicable. We can only repeat here what we said in Goetz v. Commissioner,T.C. Memo. 1978-365: Considering all the evidence in this case, we conclude that the excess contribution in question was inadvertently made, as opposed to being deliberate, in that it was probably due to a mistake, either on the part of the petitioner or on the part of his financial advisor. However, under the statute, this makes no difference. As pointed out by the Court in Orzechowski v. Commissioner, [supra], *55 in deciding how to discourage excess contributions to IRA accounts, the Congress considered several alternatives, one of which was to draw a distinction between excess contributions inadvertently made and those willfully made. However, it rejected this approach and, instead, adopted the rule now stated in the statute, under which there is no distinction between excess contributions, willfully made and those inadvertently made. The six percent excise tax applies to the excess contribution in either case. * * *
In accordance with the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year-- (A) he was an active participant in-- (i) a plan described in section 401(a) which includes a trust exempt from tax under section 501(a), (ii) an annuity plan described in section 403(a), (iii) a qualified bond purchase plan described in section 405(a), or (iv) a plan established for its employees by the United States, by a State or political division thereof, or by an agency or instrumentality of any of the foregoing, or (B) amounts were contributed by his employer for an annuity contract described in section 403(b) (whether or not his rights in such contract are nonforfeitable).↩